IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

|  |  |
|---|---|
| BONE DRY ROOFING, INC., an Indiana Corporation, <br><br>  Plaintiff, <br><br> v. <br><br> JEFF DELONJAY an Illinois individual D/B/A BONE DRY ROOFING & EXTERIORS, <br><br>  Defendant. | ) ) ) ) ) ) ) Civil Action No. _____ ) ) ) **JURY TRIAL DEMANDED** ) ) ) ) ) ) |

## COMPLAINT

Plaintiff, Bone Dry Roofing, Inc. ("Bone Dry"), sues Defendant, Jeff Delonjay d/b/a Bone Dry Roofing & Exteriors, and states:

### Jurisdiction and Venue

1. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338(a)-(b), and 1367.

2. This Court has personal jurisdiction over Defendant because Defendant does business in this judicial district, and the facts giving rise to the claims alleged herein have occurred in this judicial district.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b) (1) –(3) because a substantial part of the events giving rise to the claim occurred in this district, because the Defendant resides in this district, and because Defendant is subject to personal jurisdiction in this district.

**The Parties**

4. Bone Dry is an Indiana corporation with a principal place of business at 4825 W. 79th Street, Indianapolis, Indiana, 46268.

5. Upon information and belief, Defendant is an unincorporated entity with its principal place of business located at 2231 Laaker Rd, Quincy, Illinois, 62305.

6. Defendant, through its agents and representatives, has done, and is doing, business in this district, and has engaged in acts and/or omissions within this district, causing injury to Bone Dry.

**GENERAL ALLEGATIONS**

**The Business and Distinctive Trademarks of Bone Dry**

7. Bone Dry is a family owned and operated business, providing exceptional service in the state of Indiana under the trademark BONE DRY ROOFING and variations thereof since at least as early as 1989.

8. Since 1989, Bone Dry has added nine additional offices across six states, becoming one of the largest residential roofing companies in the Midwest.

9. Bone Dry, in part through its affiliates and licensees, has been and is now, extensively engaged in the business of marketing and selling, in interstate commerce, various construction and contracting services, including but not limited to residential and commercial roofing contracting, installation, and repair, house building and repair services, masonry services, gutter services, plumbing services, and insurance claims assistance (the "Bone Dry Services").

10. Bone Dry has been offering the Bone Dry Services in interstate commerce under

the BONE DRY ROOFING trademark since at least as early as March of 2007.

11.     Bone Dry has invested substantial resources developing, advertising, promoting and marketing the Bone Dry Services under the BONE DRY ROOFING mark throughout the United States and has established itself in the minds of consumers as the exclusive source of these high quality services.  As a result, and in addition to its registered rights described below, Bone Dry enjoys robust common law trademark rights in and to the BONE DRY ROOFING trademark and its variations, embodying valuable goodwill.

12.     In addition to its common law trademark rights, Bone Dry owns federal trademark registrations for the BONE DRY ROOFING trademark as identified below (collectively, "BONE DRY ROOFING Registered Marks"):

| Mark | Registration No. & Date | Date of First Use | Goods |
| --- | --- | --- | --- |
| BONE DRY ROOFING | 3381300<br><br>February 12, 2008 | March 2007 | House building and repair; Masonry services; Plumbing services; Roofing contracting; Roofing installation; Roofing repair; Installing siding; Installation of doors and windows. |
| (BONE DRY ROOFING logo with bulldog in doghouse) | 3381304<br><br>February 12, 2008 | March 2007 | Installation of doors and windows; House building and repair; Masonry services; Plumbing services; Roofing contracting; Roofing installation; Roofing repair; Installing siding. |

True and correct copies of documents retrieved from the U.S. Trademark Office's online database (TSDR) evidencing the current status and Bone Dry's ownership of the BONE DRY ROOFING Registered Marks are attached as **Exhibit A**. Copies of the certificates of registration are attached as **Exhibit B**.  These registrations are valid, subsisting, and in full force and effect.

13. Bone Dry's U.S. Trademark Registration Nos. 3381300 and 3381304 are incontestable. Accordingly, these registrations provide conclusive evidence of the validity of the BONE DRY ROOFING Registered Marks, Bone Dry's ownership of the BONE DRY ROOFING Registered Marks, and Bone Dry's exclusive right to use the BONE DRY ROOFING Registered Marks in connection with the services specified in the certificates of registration.

14. The BONE DRY ROOFING Registered Marks and Bone Dry's common law trademark rights as outlined in paragraphs 7-11 shall collectively be referred to as the "BONE DRY Marks."

15. The BONE DRY Marks are inherently distinctive. Additionally, the BONE DRY Marks are widely recognized by consumers as distinctively symbolizing the goodwill of Bone Dry.

16. Bone Dry markets and distributes the Bone Dry Services under the BONE DRY Marks throughout the United States, including in Illinois, online via its website www.bonedry.com as well as through prominent, national brick-and-mortar locations. Representative examples of Bone Dry's use of the BONE DRY Marks in connection with the advertising and sale of the Bone Dry Services can be found below and attached as **Exhibit C**.



17.     Bone Dry prominently uses the BONE DRY Marks directly on nationwide advertising and promotional materials, including but not limited to, social media, physical signage, keyword advertising, review sites, home shows, trade shows, direct mailers, brochures, and the Internet.

**Defendant's Infringing Designations**

18.     Long after Bone Dry obtained its federal registrations for, and began using, the BONE DRY Marks in interstate commerce, Defendant began using "BONE-DRY", "BONE DRY", "BONE DRY ROOFING & EXTERIORS", and "BONE DRY ROOFING", and various formatives thereof ("Infringing Designations") in connection with the marketing and sale of construction and roofing services ("Defendant's Services").

19.     The Infringing Designations are identical in appearance, sound, and commercial impression to the dominant portion of the BONE DRY Marks.

20.     Defendant markets and advertises its services, at least in part, via Facebook at: https://www.facebook.com/Bonedryroofingquincy/.    Representative examples of Defendant's

use of the Infringing Designations on Facebook are attached at **Exhibit D**.

21.     Defendant also markets and advertises it services via physical signage bearing the Infringing Designations as shown in **Exhibit E.**

22.     Defendant's Services are at least in part identical to the Bone Dry Services offered under the BONE DRY Marks. According to Defendant's Facebook page, Defendant's Services include reroofing, roof repair, roofover, and new construction, all of which are services that are also marketed and sold by Bone Dry.

23.     Defendant markets and sells the Defendant's Services under its Infringing Designations in the same or highly similar trade channels, and to identical or overlapping types of consumers.

24.     On January 16, 2018, Bone Dry sent a letter to Defendant, via Certified Mail, notifying it of Bone Dry's superior exclusive nationwide rights in the BONE DRY Marks and its concern that Defendant's use of the Infringing Designations is likely to cause consumer confusion. **Exhibit F.**

25.     Defendant failed to respond to the January 16, 2018 letter.

26.     On April 26, 2018 Bone Dry sent another letter via Certified Mail renewing its request that Defendant cease use of the BONE DRY Marks. **Exhibit G.**

27.     In early June 2018, counsel for Bone Dry received a call from a representative of the Defendant, named Renee DeLonjay. On this call, counsel explained Bone Dry's rights and again requested that Defendant cease use of the BONE DRY Marks.

28.     On June 11, 2018, counsel sent a follow up email to Defendant's representative. **Exhibit H.**

29.     Defendant has not responded to counsel's June 11, 2018 e-mail.

30. Notwithstanding Bone Dry's objections to the Infringing Designations, Defendant continues to use them as a designation of Defendant's Services, and this continues to create a likelihood of confusion.

31. Defendant is using its Infringing Designations with actual knowledge of Bone Dry's trademark rights, and with an intention to capitalize on the reputation and goodwill of Bone Dry, to confuse and deceive consumers, and to unfairly compete with Bone Dry.

32. Bone Dry has not authorized, licensed, or otherwise endorsed Defendant's use of its Infringing Designations.

33. Defendant's use of the Infringing Designations in connection with its services is likely to cause confusion, mistake, and deception among consumers, who are likely to believe that Defendant's Services are associated or connected with, or approved or authorized by Bone Dry, or that Defendant's Services originate from the same source as Bone Dry's Services, when that is not the case.

34. Defendant's unauthorized use of the Infringing Designations in the manner described above restricts Bone Dry's ability to control the nature and quality of the services provided under the BONE DRY Marks, and places the valuable reputation and goodwill of Bone Dry in the hands of Defendant, over which Bone Dry has no control.

35. All of the foregoing acts of Defendant have caused, and unless restrained by this Court, will continue to cause serious and irreparable injury and damage for which Bone Dry has no adequate remedy at law.

**COUNT I**
**INFRINGEMENT OF FEDERALLY REGISTERED TRADEMARKS**
**(LANHAM ACT, 15 U.S.C. § 1114(1))**

36. Bone Dry realleges paragraphs 1-35 as though fully set forth herein.

37. Defendant's promotion, advertising, provision, sale, and offering for sale of its services under the Infringing Designations are likely to confuse, mislead, or deceive consumers, the public, and the trade as to the origin, source, sponsorship, or affiliation of said services, and is intended and is likely to cause such parties to believe in error that the Defendant's services have been authorized, sponsored, approved, endorsed, or licensed by Bone Dry, or that Defendant is in some way related to or affiliated with Bone Dry.

38. Defendant's activities, as described herein, constitute infringement of the BONE DRY ROOFING Registered Marks in violation of the Lanham Act, including, but not limited to, 15 U.S.C. § 1114.

39. Defendant's use of the Infringing Designations in the promotion, advertising, and sale of its services has been and continues to be willful, deliberate, unfair, false, deceptive, and is intended to trade upon the goodwill and reputation of the BONE DRY ROOFING Registered Marks.

40. Defendant's acts have damaged and will continue to damage Bone Dry.

41. As a result of these wrongful acts, Bone Dry is entitled to injunctive relief prohibiting Defendant from using the BONE DRY ROOFING Registered Marks, or any marks confusingly similar thereto, in accordance with 15 U.S.C. § 1116, and to recover all damages that Bone Dry has sustained and will sustain, and all gains, profits, and advantages obtained by Defendant as a result of its infringing acts in an amount not yet known, as well as the costs of this action, attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(a).

## COUNT II
### UNFAIR COMPETITION
### (LANHAM ACT, 15 U.S.C. § 1125)

42. Bone Dry realleges paragraphs 1-41 as though fully set forth herein.

43. Defendant's conduct complained of herein constitutes federal unfair competition, false designation of origin, and false advertising pursuant to 15 U.S.C. § 1125(a).

44. Defendant's intentional and unlawful use in commerce of the BONE DRY Marks is likely to cause confusion, mistake, or deception as to origin, sponsorship, or approval of Defendant by Bone Dry and therefore constitutes false designation of origin and false advertising, in violation of 15 U.S.C. § 1125(a).

45. As a direct and proximate result of Defendant's knowing, deliberate, and willful infringement of the BONE DRY Marks, Bone Dry has suffered and will continue to suffer harm to its business, reputation, and goodwill.

46. As a result of result of these wrongful acts, Bone Dry is entitled to injunctive relief prohibiting Defendant from using the Bone Dry Marks, or any marks confusingly similar thereto, in accordance with 15 U.S.C. § 1116, and to recover all damages, that Bone Dry has sustained and will sustain, and all gains, profits, and advantages obtained by Defendant as a result of its infringing acts in an amount not yet known, as well as the costs of this action, attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(a), and an injunction ordering the destruction of all infringing articles pursuant to 15 U.S.C. § 1118.

## COUNT III

### DECEPTIVE TRADE PRACTICES VIOLATING THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

47. Plaintiff realleges paragraphs 1-46 as though set forth in full herein.

48. Defendant's conduct in using the Infringing Designations causes a likelihood of confusion or misunderstanding as to the sponsorship, approval, affiliation, or connection of Defendant's Services, inasmuch as it gives rise to the incorrect belief that Defendant, or

Defendant's Services have some connection to Bone Dry.

49. This is in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2.

50. As a result of result of these wrongful acts, Bone Dry is entitled to injunctive relief prohibiting Defendant from using the Infringing Designations, and costs and attorney's fees based on Defendant's intentional conduct, in accordance with the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/3.

## COUNT IV
## COMMON LAW TRADEMARK INFRINGEMENT

51. Plaintiff realleges paragraphs 1-50 as though set forth in full herein.

52. Defendant's conduct complained of herein constitutes trademark infringement under the common law of the state of Illinois.

53. Bone Dry used the BONE DRY Marks in connection with its services long before Defendant's first use of the Infringing Designations.

54. Defendant's use of the Infringing Designations without authorization from Bone Dry in connection with its services constitutes an infringement of Bone Dry's common law rights in the Bone Dry Marks.

55. Defendant's deceptive business practices, infringement, and unfair competition have been committed with the intent to cause confusion, to cause mistake, and to deceive.

56. Defendant has unfairly competed with Bone Dry by the acts complained of, has done so intentionally, and has caused and, unless enjoined by this Court, will continue to cause irreparable harm, damage and injury to Bone Dry, which has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter Judgment finding, concluding and declaring:

A.  That Defendant's use of the Infringing Designations constitutes trademark infringement under 15 U.S.C. § 1114, false designation of origin under 15 U.S.C. § 1125(a), a violation of the Illinois Uniform Deceptive Trade Practices Act, and common law trademark infringement under Illinois law, and that Defendant has been unjustly enriched as a result of its infringement;

B.  That Defendant and its owners, parent companies, subsidiary companies, related companies, successors, assigns, officers, directors, agents, employees and attorneys, and all persons or entities in active concert, participation, or privity with any of them, be preliminarily and permanently enjoined, pursuant to 15 U.S.C. §1116 and applicable state laws, from:

    1.  Using Defendant's Infringing Designations, including all formative variations, or any other names, marks or slogans in connection with construction or roofing services or related services or the Bone Dry Services that are likely to cause confusion, mistake or deception with respect to Bone Dry's trademarks;

    2.  Operating under any domain name or social media accounts containing the BONE DRY Marks, including all formative variations, or any other names, marks or slogans;

    3.  Doing any other act or thing likely to induce the mistaken belief that Defendant or Defendant's services are in any way affiliated, connected, or associated with Bone Dry or its services, or doing any other act or thing likely to cause confusion with respect to the BONE DRY Marks;

    4.    Trading on the goodwill associated with the BONE DRY Marks and passing off its services as those of Bone Dry;

    5.    Injuring Bone Dry's business reputation and the goodwill associated with the BONE DRY Marks and from otherwise unfairly competing with Bone Dry in any manner whatsoever.

    C.    That, pursuant to 15 U.S.C. § 1118, Defendant be ordered to deliver up for destruction all materials, including but not limited to labels, packaging, brochures, advertisements, literature, promotions, displays, catalogs, and all other matter in the custody or under the control of Defendant bearing its Infringing Designations or any confusingly similar marks;

    D.    That Defendant be ordered to recall from all customers, vendors, sales people, and authorized agents all materials, including but not limited to, product packaging, brochures, advertisements, promotions, yard signs, decals, and all other matter bearing Defendant's Infringing Designations;

    E.    That Defendant be ordered to notify all customers, vendors, sales people, and authorized agents of this Judgment;

    F.    That, pursuant to 15 U.S.C. § 1116, Defendant be directed to file with this Court and to serve on Plaintiff, within thirty (30) days after entry of the injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

    G.    That Defendant be directed to provide a complete accounting to Bone Dry for any and all profits realized from the sale of services bearing Defendant's Infringing Designations from inception through the date of the injunction;

H. That Plaintiff be awarded actual compensatory damages and punitive damages, including but not limited to, Defendant's profits and Bone Dry's damages, in an amount to be determined at trial;

I. That Defendant be ordered to pay treble damages pursuant to 15 U.S.C. § 1117 for its knowing, intentional, and willful violations of federal law;

J. That Bone Dry be awarded all reasonable attorneys' fees, costs and disbursements incurred by it as a result of this action, pursuant to 15 U.S.C. § 1117(a) and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/3;

K. That Bone Dry be awarded any such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues triable of right by jury.

Dated: September 7, 2018

Respectfully submitted,

BARNES & THORNBURG LLP

/s/*Jonathan P. Froemel*

Jonathan P. Froemel
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606
Telephone: 312-214-8315
Facsimile: 312-759-5646

Attorney for the Plaintiff